Please be seated. The clerk called the next case, please. Mr Thompson. Good morning. Good morning. Justices, this morning, as far as this particular appeal is concerned, I think presents both an interesting legal issue, but also a very, very serious issue for my client. As we sit here today, he sits in Danville serving a three-year sentence, and the issue before you today would really resolve whether he's supposed to be there or not. If you find that the time he spent in home confinement does apply to his sentence and should legally apply to his sentence, then he should be out and should have been out a long, long time ago. So I would ask you to keep that in mind as we proceed to rule on this particular appeal. Beginning with the Supreme Court in Beechin and following through with the legislature's amendment, I'm going to call it 4.5-100, the calculation of a term provision. The concept of home confinement has been embraced, I think, as a logical attempt at an alternative to incarceration, especially in light of the modern technology, which was in fact utilized in this case to verify that the terms of the home confinement are in fact followed. Why is this such a good thing? We all can see the benefits. It's no cost to the government, no cost for the food, no cost for the housing. In fact, in this particular case, and I think in most cases like this, even the electronic monitoring device is paid for by the defendant, and it was in this particular case. There's also a distinct benefit to society for home confinement, and I think in the legislature, in the Supreme Court, in this expansion of the use of home confinement, I think plays this out. The defendant in this particular case was allowed to accomplish his apprenticeship as a pipe fitter. So he's able to achieve things all at the same time, being confined to his home, really in no different circumstances than being confined in what we would consider to be incarceration. So I would present the general issue in this case to your honors as whether a person placed in home confinement as a consequence of an appeal bond should be given credit for said time as outlined in 4.5-100 and based on the Supreme Court's interpretation of Beecham. The review is de novo, and our argument is really twofold, at least as far as not responding to the states yet, but just to our initial arguments. The first is that Judge Peterson's order definitely qualified for home detention. Two ways I would submit, your honors, to look at this particular aspect of our argument. The first is that both the case law and the statutory interpretation, I believe, support it. If we look at Beecham and the language that the Supreme Court uses in Beecham, and I'd ask you to remember that this was before two separate modifications by the legislature to Section 4.5-100. So Beecham's kind of the first look at home confinement by the Supreme Court. At least I would submit that. The concept of Beecham is interesting. It's not how custodial you are. It's not how big the bars are, how small the room is, and how high the ceiling is. The terms that they use in Beecham are interesting. The legal duty to submit. The legal duty to submit to that authority. Legal power over the defendant. He was, quote, obligated to report. So a big concept of Beecham is the authority, the order over the defendant, to report as required by the court to do so. That is what Beecham is focusing on in addition to the other factors about incarceration. So Beecham deals with the legal authority to follow the order and the person's requirement to do that. If you remember the facts in Beecham, it was a daycare program that Cook County was running, and it was a pretrial case. And the guy was only there for 171 of, I think it was, 278 days that he was in the program. Our particular case, the defendant was at home every single day and was required to do so. So Beecham, actually the credit was given in Beecham. This case goes a little bit further. Beyond the concept of the authority over the defendant in Beecham, we can also look at the statutory requirements for home confinement and see if our case meets those requirements, and I think it does. I would submit to you it does. Supervising authority, in this particular instance we had, the supervising authority was the court through the monitoring system. We had a monitoring program going on there, and the court was required to be informed if there was any problems with the, there was none alleged in this case, but if there was any problems. He was to remain in his house. That's the same as Section 8A, 730 ILCS 5-8A-2C. He's to remain in his house. He's to only have approved absences only for educational or work purposes. That's exactly what we had here. And he had to have a working telephone line, which he did in this particular case. So I would submit to the court that the order that Judge Peterson placed on him, and I would ask one other point if I could make this crystal clear. This was not a request of the defendant. This was not something we asked for. We asked for the appellate bond. Judge Peterson kindly decided to place him under these terms and conditions of home confinement, and that's going to kind of segue into one of my other arguments later on. Section 730 ILCS 5-5-4.5-100, we submit, requires that credit be given to this particular defendant. That particular, the last modified section was effective June 22nd of 2012, and we moved to receive his credit for home confinement on July 3rd of 2013. The last paragraph of my motion, I elected to be sentenced under the new statute. That was not objected to at the trial court's level. But that statute was not in effect at the time he was sentenced. I understand that, Justice, but I would submit, Your Honor, that it was effective when he was confined. How could he elect? I'm sorry? How could he elect to be sentenced under a statute that was not in effect? My submission to the court would be because there was a modification of the sentencing provision, and the defendant has the right to seek to be elected under a new modified sentence, and the fact that, Judge, if he was in custody, if we do come to the conclusion that he was in custody at that time, then the calculation of his term, that would seem to be something that he would be entitled to embrace. And, again, if there is an ambiguity, it is to be resolved in favor of a defendant in this particular case. So I would say, Judge, since he was in custody, if we assumed his arguendo, that his home confinement terms are custody for purposes of 4.5-100, shouldn't he be getting credit for it? That would be my other argument that I would make. Let me ask you, in Beecham, the Supreme Court said you get credit for the days that you report, the day reporting. Correct. That's right. Did your client, the defendant, did he have day reporting? No, he had a monitor. So the minute he left, he went to work. The minute he was done with work, he went home. And that was through his apprenticeship program. So he wasn't reporting to any agency, or he was reporting to the apprenticeship program, and that's what he was doing. But he was under that monitor to be home at required times and to only leave on required times. In Beecham, the Supreme Court didn't say you get credit for every day you're on home confinement. It said you get credit for every day you reported to the day center. Correct, yes. And that is because you had an obligation to be there, and you had court order to be there, and that's the analysis that they utilized. So, I mean, that's a significant difference from where we are here, isn't it? It is, Judge. But I would submit that there's a really—we can boil this down. We can make it complicated, and I think we can boil it down to its simplest level, and that's, I think, what the legislature is telling us with the new amendments, and what Beecham began to tell us is this. It's okay to call home confinement custody. It's okay to do that. Here in Illinois, we're going to resolve ourselves to say that if we lock a guy up and we order an assailant's house, and maybe we electronically monitor him, maybe we don't, but if we confine him, if we put authority over him that raises to the level of confinement, then he should be given credit for it. And that's a very, very simple concept, kind of an easy way to look at it. If we're going to keep a guy locked up in this house, if we're going to keep a guy locked up in the jail, if we're going to keep a guy locked up in the pen, they should be given credit for the time that they're locked up. And that's what I think is being embraced here by the legislature, for whatever reason that may be, Your Honor. And you point out some policy concerns, but at the same time, if the legislation wants to make it that easy, they could state it that easily. Well, we were speaking before our arguments this morning, counsel and I, and I will say that 4.5-100, I don't think it was addressed for your purposes. I say that loud and clear. It does have the phrase after judgment when it deals with the 11501 provision in there about getting credit that you can't get home confinement credit prior to judgment. It does have that language in it. But I would say that it does not address the appellate issue. But, Your Honor, it also doesn't prohibit it. And that's where I get back to my argument about an ambiguity in this particular case. Maybe there does need to be another amendment to 4.5-100 to address the issue of appellate bonds. Because it's a shall, and it doesn't require any kind of confinement finding as far as a person released on bond. And we really have a, I guess I would submit to the court, a consideration. What is really the difference of a court, and it's just only that it happens so rarely that a person is left out on appellate bond, and Your Honors have the authority to do it, the trial court has the authority to do it. But the bottom line is it's so rare, but when it is allowed, what's different between a guy on an appellate bond or a lady on an appellate bond from a person, a pretrial detainee out on bond? And we know that Section 4.5-100 allows for credit for a person who's on a pretrial. That person's presumed innocent. And they're getting credit for it. So I would hope that you would consider the fact that, just embracing this concept of if we're going to confine a person, whether they're on pretrial bond, whether they're on appellate bond, if it's so granted under whatever conditions, that they should be allowed to receive credit for it. Because that's what the legislature is telling us. Now, they certainly could have put in a provision about an appellate bond and addressed it directly. They haven't. And my suggestion to the court is if you find 4.5-100 to be ambiguous, I would ask you, because we are dealing with issues of custody, that you would resolve that ambiguity in favor of my client, Jason Smith. The Beecham court specifically said that Ramos was still good. How do you deal with that? Judge, I deal with Ramos in a couple different ways. Ramos really was interpreting a statute that is now repealed. And I also would say, if I'm correct, and I do want to apologize, I think it was a 1990 opinion. It's really going way back there. And I would suggest to the court that there have been two modifications to the statute since Ramos was found. Beecham begins to get us there. You're right. Beecham does not overrule Ramos, but I would say the statutory, the legislature has. It didn't. It not only didn't overrule it, it actually seemed to rely on it. It cited it. It cited it in Beecham. It certainly is. But I guess if I would ask the court to consider reading 4.5-100 as it sits there now with the shall language in it, and now consider the ruling of Ramos, which says a person on home confinement out on pretrial bond cannot get direct opposite of each other. So I would say that the legislature would be my number one answer to your inquiry, Your Honor. And that would be my reason that I think we need to put Ramos aside and look at that mandatory language of 4.5-100. Okay. I guess that I'm looking at this as being in sort of a murky area where technically, and I know that you're arguing that something different, but that technically the trial court had discretion at the time that it sentenced him to give him credit for home confinement or not. And I guess I'm looking for an argument that says that he abused his discretion in doing that. Judge, I would submit that if this court finds that our election to be a valid election and that the state waived any objection to it, if that's the case, then I would submit, Your Honor, that 4.5-100 is a shall statute. It is not a discretionary statute. And unless I'm not following your question correctly, I apologize. No, I just am questioning whether, as I said before, whether he has the right to elect at that point, at the point where he was sentenced. He was already sentenced before that statute came into effect. That is correct, Your Honor. And I guess that's what's murky for me. I understand that, Judge, but I also would suggest that if that were electing to a statute that didn't exist when we were sentenced, however, Judge, he was in custody. And I would say that the court, when it brought him back after the remand, had an obligation to calculate or recalculate his prison term based on the 4.5-100 that was in effect at the time we came before the court, and he made that motion. Thank you. Any other questions? I'd like to finish and see if anyone has any other questions. Thank you. Mr. Austin, good morning. May it please the Court. This defendant asserts that he is entitled to sentence and credit for the time he spent in home confinement as a condition of his bond pending his direct appeal. The defendant, of course, relies on a change in the statutory language of Section 5, 4.5-100B of the Correctional Code, which went into effect after he had been sentenced. And even if this new language had been in effect when he was sentenced, it is not applicable where a defendant is granted a post-sentencing appeal bond with home confinement as a condition of that bond. And therefore, people submit that this Court should not grant the relief that the defendant requests. The defendant asserted that the home confinement ordered as a condition of his appeal bond meets the criteria for home detention under the Corrections Code. In the language of Section 5.8-7B, the earlier version of the statute at issue is the same as the new Section 5, 4.5-100B, which was in effect when the defendant committed the crime and when he was sentenced. And the same language is in the current version of the statute. And all versions say that a defendant is to receive credit only for the number of days spent in custody as a result of the offense for which the sentence was imposed. The defendant was not on home confinement as a result of the offense for which the sentence was imposed. The defendant was confined to his home as a condition of the post-sentencing direct appeal bond. The Corrections Code clearly does not provide for sentencing credit in this situation. If you allow a sentencing credit in this type of situation, this would allow defendants with relatively short sentences to obtain an appeal bond and to avoid any actual incarceration while they live in an essentially normal lifestyle. Well, but nobody's got a appeal bond as not a matter of right, correct? That's correct. It has to be granted. You don't have to give appeal bonds to either the trial courts or the appellate court, right? Yes, sir, that's correct, Your Honor. Of course, you have... Well, I'm just saying, so presumably, in response, I mean, presumably, a judge being asked for an appeal bond in that case would be aware that if he does that, in essence, it's going to undo his sentence of incarceration and therefore probably wouldn't award the appeal bond if he thought that was going to be the net result. It doesn't undo the sentence. The sentence of incarceration is still there. It just allows that person not to remain if he has, like in this case, he had a relatively short sentence of three years. So if he's day for day, he could be out in 18 months, and the appeal could have taken that entire time. So if he won on appeal, then he could have served the time that he would not have had to have served. So this appeal bond allowed him to be out, and it's not like having a home detention in lieu of incarceration, and I believe that's what the statute is about. You can still have that home detention. You can still be confined to your home and have the conditions of that home detention, but you can also have that revoked and be sentenced back to the DOC, whereas in this case, he certainly could have been confined to the DOC again, but again, it was the appeal bond that allowed him out. Couldn't that bond, by the same token, couldn't that bond be revoked? It certainly could, and that's addressed in both the Ramos court and specifically in the Beecham court, and I can go through that a little bit about what Beecham said in that regard, and first, if I may, I'd like to go through what Ramos detailed in its holdings, and it did, as counsel noted, it was about the earlier section, the 587 section, and the trial judge, he relied on Ramos in his denial of the motion to amend the minimus, and he distinguished Beecham, which, of course, the defendant has relied on. Discussing the earlier version of the statutes, and I said the Ramos court found that the phrase time spent in custody, as used in 587B, does not include the period of time during which a defendant is released on bond, regardless of the restrictions that might be imposed as conditions of release. The Ramos court said that the legislature intended to distinguish institutional custody from release on bond, and to allow sentencing credit only for the former, for the institutional custody. The court found that Ramos himself was released from institutional custody when he was admitted to bond, and that home confinement was merely a condition of that bond, and did not constitute custody within the meaning of the statute. Now in Beecham, unlike in this case and unlike in Ramos, prior to trial and not after sentencing, Beecham had been assigned to the Cook County Sheriff's Day Reporting Center Program, and he actually reported every day to that center. The Beecham court itself said that the Beecham case presented a significantly different situation than Ramos, as Beecham was not on bond. Beecham observed that a bond provided the defendant with judicial procedures to protect the defendant from arbitrary arrest, and it also provides a means to contest the aspect of bond or a denial of bond. The Beecham court noted that by contrast, the defendant in the sheriff's program had no statutory entitlement to any of the bond procedures and protections, and it observed that Beecham had no right to be in the program, he had no recourse under Illinois statutes if the sheriff decided to return him to jail. So there was no procedure for him. He just went back to jail and there was no hearing. The Beecham court concluded that the time Beecham spent in the day reporting center constituted time spent in custody for purposes of Section 5A, that earlier version of the law. People submit that Beecham is factually distinguishable as Beecham was not on bond, and he was in a structured program that he was required to report to every day to a particular location. Therefore, we submit that the Beecham holding is not applicable to this particular case. And in Beecham, basically, in a nutshell, the county jail is overcrowded, so you've got to do something, so the sheriff, these are nonviolent guys, I'm going to let you out, and you've got to come back and report. Without a court order, when somebody came in and reported, and the sheriff would say, by the way, look, we've got an empty jail cell now, and he didn't need a court order. He didn't need anything. Right. To put it back in it. That's correct. As you said, it was just to alleviate the overcrowding, and any time they found extra room in the jail, they certainly could have moved them right back into that incarceration, certainly. And the electronic home detention law, which is cited under the newest version of the law, with the shall language, does not impose any punishment, and defendant's home confinement did not meet the criteria for home detention under that statute. In this case, the defendant had been confined to his home, but he was allowed to complete an apprenticeship to become an attorney with a pipe fitter. He was allowed to travel to Wisconsin and to Indiana for work. He had to live at his mother's residence, but there were no restrictions whatsoever on whom he could associate with and on the timing and the extent of those associations. So he could have a party all night long, all day, you know, whatever he wanted to do with these people. There were no restrictions on that. The only thing he couldn't do, because these were DUI convictions, was that he could not drink alcohol, and he had that scram monitor, which monitored whether he had alcohol in his system. And he wasn't allowed to drive. That's correct, Your Honor. He was not allowed to drive. Now, the scram device was monitored by the Traffic School of Behavior Change, which is a private service provider located in Will County. It was not monitored by Grundy County Prohibition Department, as the trial judge had originally contemplated. He filed a modified order to change that. The defendant was not monitored by the Grundy County Court, the Prisoner Review Board, which is part of under 58A3D of the electronic holding detention law, and he was not monitored by any of the statute-totally-defined authorities, including the Department of Corrections, probation, supervising authorities, sheriff, superintendent, and the Municipal House of Corrections or any other. Isn't that the same as just having the regular B.A.I.D. device? I mean, B.A.I.D. devices, the blow-and-go devices, they are monitored by private companies, but that report comes to the court. It's certainly a condition of someone's conditional discharge or supervision for a DUI that they have this thing installed, but it isn't the Sheriff's Department or the Probation Department physically installing that. I don't really see the difference, just because there is a company that they had to use because it had the alcohol monitoring plus the GPS. It's just technology they didn't have. That company isn't issuing any notice to that defendant. They're sending it to the court and saying, per your order, this is where he's been, this is the blood alcohol content or whatever is in his breath. I mean, I guess that's consistent with the electronic home detention statute that the judge was able to do that. I really don't see it. I think it's sort of a distinction without a difference if we're saying that he's just out on bond but he could have a party in his home or anything else. I mean, anytime you're confining someone, unless you make specific conditions in any order, I don't really understand what the difference is. He's confined under a supervising authority of the Circuit Court of Grundy County. I mean, I guess is it because it is after his conviction or is it because it is a specific bond? But in a regular bond, if you're out on bond, you're free to go wherever you choose. If it's a felony, you're not outside of the state. But here, I mean, he wasn't just permitted to go to work. That was the only place he was going. It was someplace that they knew he was going. It was provided for in the court order. It wasn't just that he could decide where money was going. He could participate in that specific apprentice program, right? I mean, it wasn't, you know, we're going to let you out, just be home at night and wear that bracelet when you get home. It was very specific rules, correct? Initially, that was correct. And once he finished that program, then he could travel wherever the job took him, including, as I mentioned, to Wisconsin and Indiana. He could go to different states, which is a wholly different thing than most home monitoring situations. But that provided for pursuant to the court order. He couldn't just go up to Wisconsin Dells. I mean, it was only for the purpose of work, a work that he specifically provided to the court as a condition of him being allowed that release. That's correct, Your Honor. It is. The one thing that may be important to look at here is that any violation of the home confinement was not to be reported to the trial judge. It was to be reported only to the state's attorney and defense counsel. So the judge was not actually actively monitoring or supervising this detention. Any violation, as I said, went to the state's attorney and defense counsel. They then determined what was going to happen if there was going to be any kind of motion brought for revocation of the bond, etc. Counsel, you have two minutes. People submit because defendant's home confinement was not on any particular program monitored by law enforcement agency. The probation department or because it was not specifically judicially supervised that Ramos is controlling in this case. And the people are going to stand on their feet for all of their arguments. Do you have any other questions, Your Honors? Mr. Tomczak, rebuzzle. Thank you. Justices, I think maybe what we're suffering from a little bit here is growing pains. And I hate to say that, but I think I might be right. I think we've got some growing pains here. Because when you, as a former prosecutor myself, trust me, I know how the prosecutor is feeling. And his language kind of bears it out. We allowed him out. He had no restrictions. He could have a party if he chose to do so. It's the old concept of custody that we want him behind the bars, clinking the tin cup on the jailhouse doors, and that's all we're going to call custody with. It's not the state of the law in Illinois right now, and there's a lot of reasons, I think, especially the new technology that we have, that is the reason why we have changed it. We have said straightforward and very directly that home detention shall be considered custody and a person shall be given credit for it. And I submit to the court that we have a bit of growing pains in coming to that concept, that we can do it. We can confine people in their home without any cost to the state and verify their conditions. The one other response I would like to make is, and it's kind of a chicken or the egg argument, and Justice O'Brien alluded to it, is this concept of he was not in custody, quote, for the offense for which the sentence was imposed. Again, I agree with Justice O'Brien. I think that is a difference without a distinction. Of course, everybody who's on conditions of bond is subject to those conditions for the offense for which they've either been sentenced or have yet to be sentenced or yet to be adjudicated on the matter. So I don't see that as a legitimate distinction for the court. I'll leave the court with the thought I began with, and that is this. I think we are, I hope you are confronted with a very simple, common-sense approach to this new change in the law, that home confinement statutorily is considered, and we shall give defendants credit for it. This particular defendant would be out today if he's entitled to that particular credit. I think the focus I would submit to the court, the focus should be the circumstances placed upon the defendant and not the technical nature or the position his case happens to be in. Appellate bonds are dear in this state, and we know it, and you know it better than anybody. They're dear. But if a person is going to be under the court's authority to what we call custody and what the legislature has determined to be custody, I would submit to this court that they should and shall be required to be given credit for that time. And without any questions, I thank you for listening and wish you a great day. Well, let me just ask you one more question. If the law is as you proposed, and of course, I'm guessing that the trial judge didn't think that was the law when he granted the appeal bond. I guess your job is to represent your client here today, and I understand that, but nonetheless, do you think that is, as you said, appeal bonds are rare as hen's teeth, and do you think they're going to, at least on short sentence type things, and maybe a trial judge thinks, you know, I'm going to put this guy in jail for a few years, but there really is a pretty good issue that he might win on, so I'm going to give him an appeal bond, and if he thinks that he's going to get good time credit for sitting at home, whether that's going to make them even more rare? Judge, it may very well be the case. It may very well be the case. Again, I'm going to mention the growing pains because we're getting to the point where if we can embrace this concept that if we're going to confine a person to their home and we can monitor it electronically that we'll call that custody, then your question really kind of falls to the wayside, but it's hard to get there. It's awfully hard to get there. I mean, it's like the economists call it the law of unintended consequences, where you think you're doing somebody a favor, and by reading it this way, now you've just made it so nobody's ever going to get an appeal bond. I suppose that's very possible, Judge, but there may also be cases where a judge would be inclined to enter this kind of order, just specifically because that's what they want to have happen in this case, as the justices may do when the matter comes before you. I think it's a matter of discretion, to be perfectly honest with you, and I know you saw in my brief how I addressed the, quote, mischief argument. I don't know that that even needs a response. I wouldn't know what judge would do mischief with his sentence. It's an alternative option that the court should have available to them. And if we do put a person under that kind of authority, then they should be allowed to get credit for it. At least that's the state of the law, I think, as I see it right now. I would submit to the court. Thank you again. Any other questions? Thank you, Mr. Thompson. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in recess until 1 o'clock. 1.15. 1.15.